**Bruce McGregor DAVIS, Petitioner and Appellant,**

v.

**Paul J. MORRIS, Warden, Respondent and Appellee.**

**No. 82–5569.**

United States Court of Appeals, Ninth Circuit.

Submitted Oct. 18, 1983.

Decided Oct. 28, 1983.

Before CHAMBERS and HUG, Circuit Judges, and HENDERSON,* District Judge.

CHAMBERS, Circuit Judge:

In *Davis v. Morris,* 657 F.2d 1104 (9th Cir.1981), we considered Davis' contention that he had been unlawfully denied the right to represent himself at his murder trial in the California state courts in 1972. The district judge, in his opinion denying a writ of habeas corpus, had stressed evidence of the trial judge's obvious concern for Davis' ability to represent himself competently in this very serious criminal matter. 487 F.Supp. 651 (D.C.Cal.1980). He also noted that the fear of disruptive activity could well have influenced the trial judge's decision to deny the request to proceed in propria persona. See *United States v. Dujanovic,* 486 F.2d 182 (9th Cir.1973).

As the trial had occurred long before *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), had been decided, and as the record suggested a basis for the district judge's evaluation, we remanded the case to the district court to permit a fuller inquiry into the trial judge's reasoning in denying self-representation.

Counsel for the parties appeared before the California trial judge, who made a statement of his recollection of the case and of the decision with respect to Davis' motion for self-representation. The judge then invited counsel to ask questions and we detect no limitations in that process. He answered questions and a transcript was prepared of the entire proceedings. On a review of that transcript the district judge again denied the writ on the ground of the petitioner's incompetency to represent himself and also on the ground of the atmosphere of potential disruption. We find no prejudice to the appellant as the result of this manner of proceeding. *Rhinehart v. Gunn,* 661 F.2d 738 (9th Cir.1981). More-

Larry L. Scissors, Los Angeles, Cal., for petitioner and appellant.

Howard J. Schwab, Deputy Atty. Gen., Los Angeles, Cal., for respondent and appellee.

---

* The Honorable Thelton E. Henderson, United States District Judge for the Northern District of California, sitting by designation.

over, we have reviewed the transcript of the proceedings before the trial judge and we conclude that in the factual circumstances of this case, there was ample warrant for the denial of Davis' attempt to represent himself both under pre-*Faretta* and post-*Faretta* law. The motion for self-representation was made at a time when Davis was a codefendant with Charles Manson and other members of the so-called "Manson family." The trial judge described the courtroom appearances of other members of that "family" as spectators, distinctive by their shaved heads and by the markings on their foreheads. Significantly, he remembered:

> There was a coordination of activity between the Manson people. When Charles Manson did something, they nearly always followed it, so that even Steven Grogan and Susan Atkins, who could hardly put one sentence one after the other, made motions to proceed pro per because Charles Manson did and because Davis followed suit.

The trial judge stated that Manson "was inclined to be disruptive of almost any proceeding where he was present." The close associationship between the codefendants was definitely in the judge's mind and he was concerned "for the usual and orderly course of a presentation at a trial." He noted particularly the fact that

> . . . there was no lack of communication, so far as I was able to hear, between the prisoners. They were all in custody, of course, but they were even allowed to, for the purpose of the trial, associate with each other and to meet from time to time.

It was his conclusion that Charles Manson would have been "calling the strategy." Counsel inquired:

> You mentioned something before that Charles Manson was sort of calling the shots as to his followers. Based upon this at the time you made the ruling, did you believe that Bruce Davis could make a knowing and intelligent waiver of counsel?

The trial judge responded, "I didn't think he could . . . I thought he wasn't acting independently, in any event."

After Davis' case was severed from that of Manson and Atkins, the following statement was made by the court:

> Very well. The court will take it that the stipulation will prevail as to any pretrial motion, that it is deemed to have been made in this proceeding just as it was in the proceedings—in the proceeding before this court prior to separation of the defendant for trial.

Counsel for the defendant stated:

> Well, Your Honor, initially, if I may, I would like to incorporate—incorporate the proceedings had in the prior trial when all the defendants were joined, at which a motion to quash the petit jury venire was made. And the court—there was at that time certain evidence introduced. There were certain stipulations entered into. I would request that those same matters be deemed presented by way of evidence and the same stipulations stipulated to by both sides.

It thus appears that no specific motion for self-representation was reasserted at this time. The trial judge stated that, on this record, "I would say—it would just be guessing and speculating—that the motion to proceed pro per would not have been considered by me at that time." The record demonstrates that following the severance of Davis' case from that of the other defendants, evidence of changed circumstances (if any) was not put before the court in sufficient form as to any change of circumstances warranting a reconsideration of the denial of that motion for self-representation. On this record, appellant cannot claim he was improperly denied self-representation after the severance of this case from the others.

The representation of Davis on this and the former appeal has been of the highest quality and we commend his attorney. We rest our decision on the factual circumstances of this case, as attested to by the judge who tried it, by the review of the district judge, and by our own review of the

record. The writ of habeas corpus was properly denied.

Affirmed.